Gordon Law LLP
Michael R. Gordon, Esq.
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone:      914.232.9500
Fax:              914.992.6634
Email:          mgordon@gordonlawllp.com
Attorneys for Plaintiff Mahesh Shetty

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MAHESH SHETTY,

                            Plaintiff,

        -against-

SG BLOCKS, INC., PAUL GALVIN, and OASIS, a
Paychex Company,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civ. No. _____

**Complaint**

**Jury trial demanded**

      Plaintiff MAHESH SHETTY ("Plaintiff" or "Shetty"), by and through his attorneys,

GORDON LAW LLP, alleges against Defendants SG BLOCKS, INC. ("SG Blocks"), PAUL

GALVIN ("Galvin"), and OASIS, a Paychex Company (together, "Defendants") as follows:

## PRELIMINARY STATEMENT

      1.      From July 29, 2016 until August 20, 2019, Plaintiff worked for Defendant[1] SG

Blocks as President and Chief Financial Officer ("CFO"). Plaintiff brings this action against

Defendants to recover unpaid wages and supplemental wages owed to him under the Fair Labor

Standards Act ("FLSA") (29 U.S.C. § 201 *et. seq.)*, New York Labor Law ("NYLL") (Article 6

---

[1]     As more fully alleged in ¶¶ 16-21 below, SG Blocks and Oasis were joint-employers of Plaintiff.

§§ 190, *et seq.*) and supporting regulations. Plaintiff also brings this action pursuant NYLL § 195 to recover damages for Defendants' failure to provide the requisite wage notices to Plaintiff. Finally, and as set forth below, Defendants owe Plaintiff additional monies as a result of Defendants' material breach of contract.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over Plaintiff's NYLL and breach of contract claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

3.     Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendant SG Blocks is located in Brooklyn, NY, and (2) the events which give rise to Plaintiff's claims also took place at SG Blocks' direction and place of business in New York.[2]

## PARTIES

4.     Plaintiff is a resident and domiciliary of Richardson, TX. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants, as that term is defined by FLSA and NYLL.

5.     Defendant SG Blocks is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 195 Montague St., 14th Floor, Brooklyn, NY 112101. SG Blocks is a leading designer, innovator and fabricator of container-based structures. The corporation is listed on the NASDAQ, has been, and continues to be engaged in interstate commerce, and has annual gross revenues in excess of $500,000. At all

---

[2]     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because the defendants in this action are citizens of Florida and New York, while Plaintiff is a citizen of Texas, and the amount in controversy exceeds $75,000.

times relevant to this Complaint, Defendant SG Blocks was an "employer" of Plaintiff, as that term is defined by the FLSA and NYLL.

6.      Defendant Oasis is a corporation organized and existing under the laws of the State of Florida, whose business address is 2054 Vista Parkway, Suite 300 West Palm Beach, FL 33411, and is a subsidiary of Paychex Company. Oasis is a leading provider of human resources managed services and is a Professional Employer Organization. Oasis has, and continues to be engaged in interstate commerce, and has annual gross revenues in excess of $500,000. At all times relevant to this Complaint, Defendant Oasis is and was an "employer" of Plaintiff, as that term is defined by FLSA and NYLL.

7.      Defendant Galvin is an individual residing in the state of New York and is the CEO of SG Blocks. At all times relevant to this Complaint, Defendant Galvin was an "employer" of Plaintiff, as that term is defined by FLSA and NYLL. Defendant Galvin is sued individually as he exercised sufficient operational control over SG Blocks's operations to be considered Plaintiff's employer under FLSA and NYLL.

## FACTS

*Plaintiff's Employee Relationship and Executive Employment Agreement*

8.      On or about January 1, 2017 Plaintiff signed an Executive Employment Agreement with SG Blocks. *See* **Exhibit 1 (Executive Employment Agreement).**

9.      The Executive Employment Agreement was in effect from the date of its execution until the termination of Plaintiff's employment. *See* Exh. 1, section 2.

10.     Pursuant to the Executive Employment Agreement, Plaintiff was to receive an annual base salary of $180,000. *Id.* at section 3(a) (this base was later increased to $300,000t).

11.     Pursuant to the Executive Employment Agreement, Plaintiff was also eligible for, and entitled to, various discretionary annual cash bonuses, as well as additional compensation and supplemental wages in the form of, but not limited to, common stock and stock options. *Id.* at sections 3(b)-(i).

12.     The Executive Employment Agreement also provided for Plaintiff's "Compensation Upon Termination". *Id.* at section 8.

13.     Specifically, section 8 states that for an employee terminated without cause such as Plaintiff, in addition to being entitled a prorated base salary at the time of termination, the "Executive shall receive: (A) the amounts and/or benefits listed in Section 8(a) and (b); and (B) an amount equivalent to one (1) year of the Base Salary . . . and (ii) immediate vesting of any of the 104,209 outstanding stock options owned by Mr. Shetty on the date hereof, excluding the Offering Options, that remain unvested as of the Termination Date." *Id.* (outlining SG Blocks's severance payments obligations under the Executive Employment Agreement). During his employment in 2017, Plaintiff deferred $127,500 in bonuses at the Defendant Galvin's demand, which was converted in 2019 to restricted stock units ("RSU"), and vest in three equal installments beginning on December 31, 2019, and to be delivered within 90 days of when the executive is no longer employed by the Company.[3] *See* **Exhibit 2 (proxy statement).**

14.     These RSUs were never actually issued to Mr. Shetty as required after his termination.

15.     During his employment in 2018, Plaintiff deferred $106,856 in compensation, and $75,000 in bonuses at the Defendant Galvin's demand, which  was converted in 2019 to RSUs,

---

[3]     The RSUs were to vest in full if, prior to the Vesting Date and during the Grantee's or Plaintiff's continuous service, he became "disabled" within the meaning of Section 409A of the Internal Revenue Code (the "Code") or his employment was terminated by the Company without Cause.

and vest on December 31, 2019 and were to be delivered on January 1, 2020.[4] *See id.* These

RSUs also were never actually issued to Plaintiff as required after his termination.

***Defendants' Joint Employer Relationship and Client Service Agreement***

16.     At all times relevant to Plaintiff's employment, SG Blocks and Oasis[5] were

Plaintiff's joint employers.

17.     On or about November 15, 2010, SG Blocks and Oasis executed a Client Service

Agreement, which outlines the personnel and human resource management services Oasis would

provide to SG Blocks. This agreement remained in effect during the course of Plaintiff's

employment with SG Blocks.  *See* **Exhibit 3 (Client Service Agreement).**

18.     The Client Service Agreement specifically contemplated a co-employment

relationship between SG Blocks and Oasis on the one hand, and SG Blocks's employees on the

other: "Oasis and [SG Blocks] intend to serve as co-employers of the Worksite Employees, with

Oasis responsible for the services described in this Agreement while [SG Blocks] retains such

employer responsibility necessary to conduct its business." *Id.*, Preamble.

19.     The Client Service Agreement further provided Oasis with the "right of direction

and control over Worksite Employees" and "a right to hire, discipline, reassign and terminate

Worksite Employees." *Id.* at I.A.1-2.

20.     The Client Service Agreement also gave responsibility over "payment of salaries,

wages and other compensation due the Worksite Employees" to Oasis. *Id.* at I.A.1-3.

---

[4]     *See* fn.3, above.

[5]     SG Blocks originally contracted services with Staff One, Inc., which were assumed following
acquisition by Oasis.

21.     Plaintiff was a "Worksite Employee" as contemplated by the Client Service
Agreement.

***Plaintiff's Exemplary Performance and Defendants' Violations***

22.     Over the course of his employment, Plaintiff met the requirements expected of
him and his position and he was never reprimanded for his performance or conduct until the date
of his termination.

23.     Indeed, Plaintiff's performance was so good in 2017 and 2018 that he earned
$202,500 in performance bonuses pursuant to the Executive Employment Agreement.

24.     Despite his outstanding performance, on August 20, 2019, Defendants terminated
Plaintiff's employment.

25.     At the time of his termination, Plaintiff had not been paid above twelve months of
wages and two performance bonuses. In total, Defendants failed to pay Plaintiff $372,638 in
unpaid wages, including $170,138 in earned but unpaid wages and $202,500 in bonuses. ***See***
**Exhibit 4 (Unpaid Wages & Bonus Detail).**[6]

26.     Plaintiff was also entitled to severance pay and immediate vesting of outstanding
stock options pursuant to section 8 of the Executive Employment Agreement.

27.     Moreover, Plaintiff was entitled to $88,282 in salary arrears  that he never
received.

28.     Plaintiff never received wage notices outlining any deductions to his wages.

---

[6]     Plaintiff previously filed a Wage Claim Information with the Texas Workforce Commission
concerning Defendants' labor violations asserted herein.  Exhibit 4 to this Complaint comes from that
matter.  A resolution between the parties, however, was not reached in the Texas venue, and Plaintiff
withdrew his Texas filing prior to filing the Complaint here.

29.     Defendants' refusal to pay Plaintiff his wages, and monies owed to him pursuant to the Executive Employment Agreement is knowing and willful.

## FIRST CAUSE OF ACTION
## UNPAID WAGES (FLSA)

30.     Plaintiff repeats and realleges Paragraphs 1-29 as if fully set forth herein.

31.     At all relevant times, Defendants had gross revenues in excess of $500,000.

32.     At all relevant times, Defendants were employers and joint employers engaged in interstate commerce, within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

33.     At all relevant times, Defendants employed Plaintiff within the meaning of FLSA.

34.     Defendants failed to compensate Plaintiff for approximately one year of earned wages and two performance bonuses amounting to $372,638. Defendants' failure to pay Plaintiff his agreed-upon and earned wages constitutes a violation of FLSA.

35.     Defendants' violation of FLSA was willful and intentional, within the meaning of 29 U.S.C. § 255(a).

36.     As a result of Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants: compensation for all unpaid wages and unpaid supplemental wages; an additional equal amount as liquidated damages; pre-judgment and post-judgment interest, and his reasonable attorneys' fees, costs and disbursements of this action.

## SECOND CAUSE OF ACTION
## UNPAID WAGES (NYLL)

37.     Plaintiff repeats and realleges Paragraphs 1-36 as if fully set forth herein.

38.     At all relevant times, Plaintiff was employed and jointly employed by Defendants within the meaning of New York's Labor Law.

39.     Pursuant to NYLL §191, Plaintiff was required to be paid all wages owed "not less frequently than semi-monthly."

40.    Defendants violated NYLL § 191 by failing to pay Plaintiff the wages owed to him under the Executive Employment Agreement, and by failing to pay his performance bonuses.

41.    Defendants' violation of the NYLL was willful and intentional, within the meaning of NYLL § 663.

42.    As a result of Defendants' violation of the NYLL, Plaintiff is entitled to recover from Defendants: compensation for all unpaid wages and unpaid supplemental wages; an additional equal amount as liquidated damages; pre-judgment and post-judgment interest, and his reasonable attorneys' fees, costs and disbursements of this action.

### THIRD CAUSE OF ACTION
### NYLL WAGE NOTICE VIOLATION

43.    Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein

44.    At all relevant times, Plaintiff was employed and jointly employed by Defendants within the meaning of New York's Labor Law.

45.    Pursuant to NYLL §195, Defendants were required to provide Plaintiff with regular pay notices outlining any pay deductions.

46.    Defendants never provided any such notices to Plaintiff.

47.    Defendants' failure to provide such notices was willful and intentional.

48.    As a result, Defendants are liable to Plaintiff for statutory damages as set forth pursuant NYLL §198, his reasonable attorneys' fees, costs,   and disbursements of this action.

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT

49.    Plaintiff repeats and realleges Paragraphs 1-48 as if fully set forth herein.

8

50.     On or about January 1, 2017 Plaintiff signed an Executive Employment Agreement with SG Blocks that remained in effect during the remainder of Plaintiff's employment.

51.     Plaintiff performed all duties, promises, and obligations required by the contract.

52.     Defendants have refused to pay Plaintiff the wages he is due, including $170,138 in earned but unpaid wages and $202,500 in bonuses.

53.     In refusing to pay Plaintiff the foregoing amounts, as required by the contract, Defendants have failed to perform the duties, promises, and obligations required by contract. Defendants' failure in this regard constitutes a material breach of contract.

54.     Defendants have refused to pay Plaintiff the severance in the amount of $300,000, due to him under the Executive Employment Agreement.

55.     As a result, these defendants' material breach of the contract has caused the Plaintiff to suffer damages in an amount not less than $672,638.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment awarding:

A. Compensatory Damage for unpaid wages and supplemental wages in an amount to be determined at trial but believed to be at least $672,638;

B. Prejudgment Interest;

C. Liquidated Damages pursuant to FLSA and NYLL;

D. Back Pay, Front Pay, and damages for all employment benefits Plaintiff would have received but for the discriminatory acts and practices of Defendants;

E. Plaintiff's costs and reasonable attorneys' fees; and

F. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all claims so triable.

Dated:      Katonah, New York
            January 31, 2020

                        GordonLaw LLP

                        By: _____
                            Michael R. Gordon

                        *Attorneys for Plaintiff Mahesh Shetty*
                        51 Bedford Road, Suite 2
                        Katonah, New York 10536
                        Telephone     914.232.9500
                        Fax           914.992.6634
                        Email         mgordon@gordonlawlllp.com