Gordon Law LLP
Michael R. Gordon, Esq.
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone:   914.232.9500
Fax:         914.992.6634
Email:       mgordon@gordonlawllp.com
Attorneys for Plaintiff Mahesh Shetty

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

MAHESH SHETTY,

                Plaintiff,

   -against-

SG BLOCKS, INC., PAUL GALVIN, and OASIS, a Paychex Company,

                Defendants.

------------------------------------------------

Civ. No. 20 cv. 00550

**Amended Complaint**

**Jury trial demanded**

Plaintiff MAHESH SHETTY ("Plaintiff" or "Shetty"), by and through his attorneys, GORDON LAW LLP, as and for his Amended Complaint, alleges against Defendants SG BLOCKS, INC. ("SG Blocks"), PAUL GALVIN ("Galvin"), and OASIS, a Paychex Company (together, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.    From July 29, 2016 until August 20, 2019, Plaintiff worked for Defendant[1] SG Blocks as President and Chief Financial Officer ("CFO"). Plaintiff brings this action against Defendants to recover unpaid wages and supplemental wages owed to him under the Fair Labor

---

[1]    As more fully alleged in ¶¶ 16-21 below, SG Blocks and Oasis were joint-employers of Plaintiff.

Standards Act ("FLSA") (29 U.S.C. § 201 *et. seq.*), New York Labor Law ("NYLL") (Article 6 §§ 190, *et seq*.) and supporting regulations. Plaintiff also brings this action pursuant NYLL § 195 to recover damages for Defendants' failure to provide the requisite wage notices to Plaintiff. Finally, and as set forth below, Defendants owe Plaintiff additional monies as a result of Defendants' material breach of contract.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over Plaintiff's NYLL and breach of contract claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

3. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendant SG Blocks is located in Brooklyn, NY, and (2) the events which give rise to Plaintiff's claims also took place at SG Blocks' direction and place of business in New York.[2]

## PARTIES

4. Plaintiff is a resident and domiciliary of Richardson, TX. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants, as that term is defined by FLSA and NYLL.

5. Defendant SG Blocks is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 195 Montague St., 14th Floor, Brooklyn, NY 112101. SG Blocks is a leading designer, innovator and fabricator of container-based structures. The corporation is listed on the NASDAQ, has been, and continues to

---

[2] This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because the defendants in this action are citizens of Florida and New York, while Plaintiff is a citizen of Texas, and the amount in controversy exceeds $75,000.

be engaged in interstate commerce, and has annual gross revenues in excess of $500,000. At all times relevant to this Complaint, Defendant SG Blocks was an "employer" of Plaintiff, as that term is defined by the FLSA and NYLL.

6. Defendant Oasis is a corporation organized and existing under the laws of the State of Florida, whose business address is 2054 Vista Parkway, Suite 300 West Palm Beach, FL 33411, and is a subsidiary of Paychex Company. Oasis is a leading provider of human resources managed services and is a Professional Employer Organization. Oasis has, and continues to be engaged in interstate commerce, and has annual gross revenues in excess of $500,000. At all times relevant to this Complaint, Defendant Oasis is and was an "employer" of Plaintiff, as that term is defined by FLSA and NYLL.

7. Defendant Galvin is an individual residing in the state of New York and is the CEO of SG Blocks. At all times relevant to this Complaint, Defendant Galvin was an "employer" of Plaintiff, as that term is defined by FLSA and NYLL. Defendant Galvin is sued individually as he exercised sufficient operational control over SG Blocks' operations to be considered Plaintiff's employer under FLSA and NYLL.

## FACTS

*Plaintiff's Employee Relationship and Executive Employment Agreement*

8. On or about January 1, 2017 Plaintiff signed an Executive Employment Agreement with SG Blocks. **See Exhibit 1 (Executive Employment Agreement).**

9. The Executive Employment Agreement was in effect from the date of its execution until the termination of Plaintiff's employment. *See* Exh. 1, section 2.

10. Pursuant to the Executive Employment Agreement, Plaintiff was to receive an annual base salary of $180,000, later increased to $300,000. *Id.* at section 3(a).

11. Pursuant to the Executive Employment Agreement, Plaintiff was also eligible for, and entitled to, various discretionary annual cash bonuses, as well as additional compensation and supplemental wages in the form of, but not limited to, common stock and stock options. *Id*. at sections 3(b)-(i).

12. The Executive Employment Agreement also provided for Plaintiff's "Compensation Upon Termination". *Id*. at section 8.

13. Specifically, section 8 states that for an employee terminated without cause such as Plaintiff, in addition to being entitled a prorated base salary at the time of termination, the "Executive shall receive: (A) the amounts and/or benefits listed in Section 8(a) and (b); and (B) an amount equivalent to one (1) year of the Base Salary . . . and (ii) immediate vesting of any of the 104,209 outstanding stock options owned by Mr. Shetty on the date hereof, excluding the Offering Options, that remain unvested as of the Termination Date." *Id*. (outlining SG Blocks' severance payments obligations under the Executive Employment Agreement). During his employment in 2017, Plaintiff deferred $127,500 in bonuses at the Defendant Galvin's demand, which was converted in 2019 to restricted stock units ("RSU"), and vest in three equal installments beginning on December 31, 2019, and to be delivered within 90 days of when the executive is no longer employed by the Company.[3] ***See* Exhibit 2 (proxy statement).**

14. These RSUs were never actually issued to Mr. Shetty as required after his termination.

15. During his employment in 2018, Plaintiff deferred $106,856 in compensation, and $75,000 in bonuses at the Defendant Galvin's demand, which was converted in 2019 to RSUs,

---

[3] The RSUs were to vest in full if, prior to the Vesting Date and during the Grantee's or Plaintiff's continuous service, he became "disabled" within the meaning of Section 409A of the Internal Revenue Code (the "Code") or his employment was terminated by the Company without Cause.

4

and vest on December 31, 2019 and were to be delivered on January 1, 2020.[4] *See id.* These RSUs also were never actually issued to Plaintiff as required after his termination.

***Defendants' Joint Employer Relationship and Client Service Agreement***

16. At all times relevant to Plaintiff's employment, SG Blocks and Oasis[5] were Plaintiff's joint employers.

17. On or about November 15, 2010, SG Blocks and Oasis executed a Client Service Agreement, which outlines the personnel and human resource management services Oasis would provide to SG Blocks. This agreement remained in effect during the course of Plaintiff's employment with SG Blocks. *See* **Exhibit 3 (Client Service Agreement).**

18. The Client Service Agreement specifically contemplated a co-employment relationship between SG Blocks and Oasis on the one hand, and SG Blocks' employees on the other: "Oasis and [SG Blocks] intend to serve as co-employers of the Worksite Employees, with Oasis responsible for the services described in this Agreement while [SG Blocks] retains such employer responsibility necessary to conduct its business." *Id.*, Preamble.

19. The Client Service Agreement further provided Oasis with the "right of direction and control over Worksite Employees" and "a right to hire, discipline, reassign and terminate Worksite Employees." *Id.* at I.A.1-2.

20. The Client Service Agreement also gave responsibility over "payment of salaries, wages and other compensation due the Worksite Employees" to Oasis. *Id.* at I.A.1-3.

---

[4] *See* fn.3, above.

[5] SG Blocks originally contracted services with Staff One, Inc., which were assumed following acquisition by Oasis.

5

21. Plaintiff was a "Worksite Employee" as contemplated by the Client Service Agreement.

*Plaintiff's Exemplary Performance and Defendants' Violations*

22. Over the course of his employment, Plaintiff met the requirements expected of him and his position and he was never reprimanded for his performance or conduct until the date of his termination.

23. Indeed, Plaintiff's performance was so good in 2017 and 2018 that he earned $202,500 in performance bonuses pursuant to the Executive Employment Agreement.

24. Despite his outstanding performance, on August 20, 2019, Defendants terminated Plaintiff's employment.

25. At the time of his termination, Plaintiff had not been paid above twelve months of wages and two performance bonuses. In total, Defendants failed to pay Plaintiff $372,638 in unpaid wages, including $170,138 in earned but unpaid wages and $202,500 in bonuses. **See Exhibit 4 (Unpaid Wages & Bonus Detail).**[6]

26. Plaintiff was also entitled to severance pay and immediate vesting of outstanding stock options pursuant to section 8 of the Executive Employment Agreement.

27. Moreover, Plaintiff was entitled to $88,282 in salary arrears that he never received.

28. Plaintiff never received wage notices outlining any deductions to his wages.

---

[6] Plaintiff previously filed a Wage Claim Information with the Texas Workforce Commission concerning Defendants' labor violations asserted herein. Exhibit 4 to this Complaint comes from that matter. A resolution between the parties, however, was not reached in the Texas venue, and Plaintiff withdrew his Texas filing prior to filing the Complaint here.

29. Defendants' refusal to pay Plaintiff his wages, and monies owed to him pursuant to the Executive Employment Agreement is knowing and willful.

*Defendants' retaliatory actions*

30. In response to Plaintiff's legitimate and lawful demands to be paid the wages and other monies owed to him, Defendants' have taken a series of retaliatory actions against Plaintiff, including without limitation the withholding of compensation due and owing to Plaintiff, the refusal to defend and indemnify Plaintiff pursuant to that certain Director Indemnification Agreement, a true and accurate copy of which is annexed **Exhibit 5** hereto, a threat to move under Fed. R. Civ. P. 11 for sanctions, and the issuance of an 8-K statement on or about February 21, 2020, a true and accurate copy of which is annexed as **Exhibit 6 hereto**, containing false and defamatory statements about Plaintiff, all as more fully set forth below.

31. At the direction and insistence of Defendant Galvin, Defendant SG Blocks took steps to withhold and did withhold salary and benefits from Plaintiff in retaliation for Plaintiff demanding that certain misrepresentations in the December 9, 2019 S-1/A Statement be corrected.

32. Specifically, Plaintiff pointed out to the Board of Directors of Defendant SG Blocks on or about December 10, 2019 that the backlog information included in the December 9, 2019 S-1/A Statement was misleading.

33. Defendant Galvin caused Defendant SG Blocks to retaliate against Plaintiff for raising this issue with the Board by withholding from Plaintiff compensation due and owing to him.

34. Moreover, in retaliation for Plaintiff then seeking the wages due and owing to him, Defendants took steps to deny Plaintiff, and did deny Plaintiff, compensation to which he

7

was entitled and to which Defendants knew he was entitled, specifically, director fees in the amount of $17,500.

35. Plaintiff is and was entitled to such director fees because he is and was at all relevant times a member of the Board of Directors of Defendant SG Blocks, which routinely awards directors fees for board service.

36. Upon information and belief, Defendants intentionally chose to withhold the director fees to which Plaintiff is entitled as a retaliatory measure, taken in response to Plaintiff's decision to seek the wages to which he is entitled.

37. In a further act of retaliation for seeking wages due and owing to Plaintiff, Defendants have refused to defend and indemnify Plaintiff from and against litigation brought against him solely in his capacity as a director Defendant SG Blocks.

38. Specifically, on or about August 10, 2018, an action was commenced in the Supreme Court of the State of New York, County of New York, entitled *Pizzarotti, LLC v. Phipps & Co., Jack Phipps, Maya Phipps, SG Blocks Inc., and Mahesh Shetty*, Index No. 653996/2018 (the "Pizzarotti Action").

39. After the Pizzarotti Action was commenced Plaintiff requested that Defendant SG Blocks defend and indemnify Plaintiff from and against all liability, damages, costs, and expense in respect of the Pizzarotti Action.

40. Initially, Defendant SG Blocks engaged the law firm of Thompson Hine to defend Plaintiff alongside Defendant SG Blocks, both of whom were named as Defendants in the Pizzarotti Action.

41. Upon information and belief, on or about August 28, 2019, Thompson Hine advised Plaintiff and Defendant SG Blocks that Thompson Hine wished to withdraw as counsel for both of them in the Pizzarotti Action.

42. Upon information and belief, on or about September 11, 2019, the law firm of Ruta Soulios & Stratis LLP (the "Soulios Firm") substituted in as counsel for Defendant SG Blocks in place of Thompson Hine.

43. The Soulios Firm did not enter an appearance for Plaintiff in the Pizzarotti Action.

44. Defendant SG Blocks did not provide any other counsel for Plaintiff in the Pizzarotti Action.

45. Plaintiff reminded Defendant Galvin that Defendant SG Blocks was obligated under the Indemnification Agreement between Plaintiff and Defendant SG Blocks to defend and indemnify Plaintiff in matters such as the Pizzarotti Action.

46. Defendant Galvin initially agreed, on behalf of SG Blocks, to defend and indemnify Plaintiff and, as part of that agreement, "pay" Plaintiff's expenses incurred in defending against the Pizzarotti Action.

47. Indeed, on the morning of December 16, 2019, Defendant Galvin confirmed in writing to Plaintiff that "the Company [presumably Defendant SG Blocks] would pay for your coverage [in respect of the Pizzarotti Action]."

48. Shortly after Plaintiff filed his wage claim with the Texas Workforce Commission concerning Defendants' labor violations asserted herein, Defendant SG Blocks rescinded its agreement to defend and indemnify Plaintiff in respect of the Pizzarotti Action.

49. Upon information and belief, the decision to rescind the agreement to defend and indemnify Plaintiff, as aforesaid, was made in retaliation for Plaintiff's decision to demand that

the S-1/A Statement be corrected and in retaliation for Plaintiff's decision to pursue the wages due and owing to him by Defendant SG Blocks.

50. As a direct and proximate cause of Defendants' refusal to honor their obligation and agreement to defend and indemnify Plaintiff in respect of the Pizzarotti Action, Plaintiff has been forced to incur substantial legal expense in defending against the claims against him in that action.

51. Further, as a direct and proximate cause of Defendants' refusal to honor their obligation and agreement to defend and indemnify Plaintiff in respect of the Pizzarotti Action, Plaintiff remains exposed to potential liability in the Pizzarotti Action.

52. In another act retaliation, Defendant SG Blocks issued a Form 8-K Statement pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, a true and accurate copy of which is annexed as Exhibit 6 (the "8-K Statement") hereto containing false and defamatory statements about Plaintiff.

53. Specifically, the 8-K Statement makes the following false statements, the falsity of which was, upon information and belief, known to Defendants at the time such statements were made:

    a. That Plaintiff "resigned in August 2019."

    b. That "by written agreement [Plaintiff] agreed to accept restricted stock units of the Company's common stock in full satisfaction and payment of substantially all alleged unpaid wages and bonuses that are claimed in the [captioned] Action."

    c. That "[the Employment Agreement] expressly disclaims any entitlement to or liability for severance during the employee's renewal term of employment."

    d.  That "[t]he Texas Wage Claim [filed by Plaintiff] was voluntarily dismissed by the employee upon the Company's filing of a fraud complaint with the Labor Law Division of the Texas Workforce Commission."

  54.  Contrary to what is set forth in the 8-K Statement:

    a.  Plaintiff did not resign his position SG Block; rather, he was terminated;

    b.  Plaintiff never received restricted stock units of the common stock of Defendant SG Block and therefore is owed the wages and bonuses he agreed to defer in the expectation he would receive those units;

    c.  The Executive Employment Agreement does not expressly or impliedly disclaim any liability that is the subject of this action; and

    d.  Plaintiff withdrew the Texas Wage Claim voluntarily so that he could pursue a more appropriate action in a more appropriate venue – this action – and did not voluntarily withdraw that claim "upon" Defendant SG Block's filing of a meritless "fraud" claim with the Texas Workforce Commission.

  55.  On March 12, 2020, Steven Soulios, upon information and belief a member of the Soulios Firm, communicated directly to Plaintiff in writing without first seeking and obtaining consent from Plaintiff's attorneys, the undersigned, to have such a communication and without copying or otherwise providing a copy of the letter to Plaintiff's attorneys.  A true and accurate copy of the March 12 letter is annexed as **Exhibit 7** hereto.

  56.  More than one month earlier, on February 3, 2020, at about 1pm, Mr. Soulios stated in an email to the undersigned that he (Mr. Soulios) had been "advised by Jaime Ramon, Esq. that [GordonLaw LLP] represent[s] Mahesh Shetty in connection with his employment related dispute with the Company."  Later that evening, at about 7:47pm, Mr. Soulios sent an

11

email to Mr. Shetty on this subject, copying the undersigned, stating that, "[y]our personal legal matters are not appropriately directed to the members of the Board. You have a legal dispute with the Company. The Company has retained counsel, me, to handle that matter. Your attorney is the only person that should be advocating for any of your personal legal matters/claims. Let him handle it." Again, Mr. Soulios copied the undersigned. Two minutes later, Mr. Soulios communicated yet again with Mr. Shetty and stated as follows: "Have Mr. Gordon appropriately represent your interests and cease from any further communications with me or the Company (including its officers and directors) concerning your personal legal matters."

57. Upon information and belief, the March 12 letter from Mr. Soulios to Plaintiff was issued at the direction of Defendants in a further effort to retaliate against Plaintiff.

58. Upon information and belief, Defendants intended for the March 12 letter from Mr. Soulios to intimidate Plaintiff and dissuade him from pursuing his rights under the FLSA and the NYLL.

**AS AND FOR A FIRST CAUSE OF ACTION
(UNPAID WAGES (FLSA))**

59. Plaintiff repeats and realleges Paragraphs 1-58 as if fully set forth herein.

60. At all relevant times, Defendants had gross revenues in excess of $500,000.

61. At all relevant times, Defendants were employers and joint employers engaged in interstate commerce, within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62. At all relevant times, Defendants employed Plaintiff within the meaning of FLSA.

63. Defendants failed to compensate Plaintiff for approximately one year of earned wages and two performance bonuses amounting to $372,638 net of any payments that might have been made or credited to or on behalf of Plaintiff without his knowledge. Defendants' failure to pay Plaintiff his agreed-upon and earned wages constitutes a violation of FLSA.

64. Defendants' violation of FLSA was willful and intentional, within the meaning of 29 U.S.C. § 255(a).

65. As a result of Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants: compensation for all unpaid wages and unpaid supplemental wages; an additional equal amount as liquidated damages; pre-judgment and post-judgment interest, and his reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
### (UNPAID WAGES (NYLL))

66. Plaintiff repeats and realleges Paragraphs 1-65 as if fully set forth herein.

67. At all relevant times, Plaintiff was employed and jointly employed by Defendants within the meaning of New York's Labor Law.

68. Pursuant to NYLL §191, Plaintiff was required to be paid all wages owed "not less frequently than semi-monthly."

69. Defendants violated NYLL § 191 by failing to pay Plaintiff the wages owed to him under the Executive Employment Agreement, and by failing to pay his performance bonuses.

70. Defendants' violation of the NYLL was willful and intentional, within the meaning of NYLL § 663.

71. As a result of Defendants' violation of the NYLL, Plaintiff is entitled to recover from Defendants: compensation for all unpaid wages and unpaid supplemental wages; an additional equal amount as liquidated damages; pre-judgment and post-judgment interest, and his reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
### (NYLL WAGE NOTICE VIOLATION)

72. Plaintiff repeats and realleges Paragraphs 1-71 as if fully set forth herein

73. At all relevant times, Plaintiff was employed and jointly employed by Defendants within the meaning of New York's Labor Law.

74. Pursuant to NYLL §195, Defendants were required to provide Plaintiff with regular pay notices outlining any pay deductions.

75. Defendants never provided any such notices to Plaintiff.

76. Defendants' failure to provide such notices was willful and intentional.

77. As a result, Defendants are liable to Plaintiff for statutory damages as set forth pursuant NYLL §198, his reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT UNDER NEW YORK LAW)

78. Plaintiff repeats and realleges Paragraphs 1-77 as if fully set forth herein.

79. On or about January 1, 2017 Plaintiff signed an Executive Employment Agreement with SG Blocks that remained in effect during the remainder of Plaintiff's employment.

80. Plaintiff performed all duties, promises, and obligations required by the contract.

81. Defendants have refused to pay Plaintiff the wages he is due, including $170,138 in earned but unpaid wages and $202,500 in bonuses, net of any payments that might have been made or credited to or on behalf of Plaintiff without his knowledge.

82. In refusing to pay Plaintiff the foregoing amounts, as required by the contract, Defendants have failed to perform the duties, promises, and obligations required by contract. Defendants' failure in this regard constitutes a material breach of contract.

83. Defendants have refused to pay Plaintiff the severance in the amount of $300,000, due to him under the Executive Employment Agreement.

84. As a result, these defendants' material breach of the contract has caused the Plaintiff to suffer damages in an amount not less than $672,638, net of any payments that might have been made or credited to or on behalf of Plaintiff without his knowledge.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (RETALIATION UNDER THE FLSA AND THE NYLL)

85. Plaintiff repeats and realleges Paragraphs 1-84 as if fully set forth herein.

86. Plaintiff was previously employed by Defendant SG Blocks.

87. Plaintiff is a member of the Board of Directors of Defendant SG Blocks.

88. On or about December 9, 2019, Plaintiff brought to the attention of the Board of Directors of Defendant SG Blocks certain substantial errors and omissions and misrepresentations in the December 9, 2019 S-1/A Statement of Defendant SG Blocks.

89. On or about August 20, 2019, Plaintiff was terminated by Defendant SG Blocks.

90. Defendants withheld wages and bonuses from Plaintiff as part of a continuing campaign of retaliation for Plaintiff's efforts to try to require Defendants to re-state the December 9, 2019 S-1/A Statement in a way that would correct the errors, omissions, and misrepresentations it contained.

91. After he was terminated, Plaintiff sought to recover the wages and bonuses to which he was entitled, as such wages and bonuses were being withheld from him by Defendants.

92. In pursuing the wages and bonuses due him, Plaintiff filed his TWC claim and this action, both of which are protected activities within the meaning of the FLSA.

93. In retaliation for exposing the errors, omissions, and misrepresentations in the December 9, 2019 S-1/A Statement and seeking to recover wages and bonuses due Plaintiff, Defendants retaliated against Plaintiff, including without limitation taking the retaliatory actions more fully described in Paragraphs 30-58 above, incorporated by reference herein.

94. The retaliatory actions more fully described in Paragraphs 30-58 above adversely affected Plaintiff. In that regard, the refusal to pay over the director fees and other compensation he is owed has caused Plaintiff to suffer economic harm, the refusal to defend Plaintiff in respect of the Pizzarotti Action caused Plaintiff to suffer economic harm in the form of legal expenses that he should not have had to bear and should not have to bear and leaves him exposed to potential liability in that action, the filing of the 8-K Statement has caused Plaintiff to lose credibility and has caused him shame and embarrassment, and the March 12, 2020 letter from Mr. Soulios has caused him to feel intimidated.

95. The retaliatory actions more fully described in Paragraphs 30-58 above constitute adverse employment actions within the meaning of the FLSA and the NYLL.

96. The retaliatory actions more fully described in Paragraphs 30-58 above were directly and proximately caused by the protected activity of Plaintiff, namely, the decision to seek the recovery of wages and bonuses due and owing to him by Defendants.

97. The retaliatory actions more fully described in Paragraphs 30-58 above, were knowingly and willfully made by Defendants as a direct result of and in retribution for Plaintiff's exercise of his rights under the FLSA and NY law.

98. Defendants have taken and continue to take retaliatory actions against Plaintiff in and in respect of this very action, including (a) threatening to seek the imposition of sanctions and other penalties of Fed. R. Civ. P. 11 against Plaintiff even though absolutely no basis exists for the imposition of such sanctions and penalties and (b) directing their counsel to threaten Plaintiff, whom Defendants and their counsel knew at the time was represented by the undersigned, that if he does not resign he will be removed from of the Board of Directors of S.G. Blocks and assessed the cost of such removal efforts, "including attorneys' fees."

99. As a direct and proximate result of the retaliatory action taken by Defendant SG Blocks, Plaintiff has been damaged in an amount to be proved at trial but believed to be in excess of $5 million.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

100. Plaintiff repeats Paragraphs 1-99 as if fully set forth herein.

101. Plaintiff has demanded that Defendant SG Blocks defend and indemnify Plaintiff in respect of the Pizzarotti Action.

102. In violation of its obligation and agreement to do so, Defendant SG Blocks has refused to defend and indemnify Plaintiff in respect of the Pizzarotti Action as more fully set forth in Paragraphs 38-51 above.

103. There is an actual case and controversy between Plaintiff and Defendants regarding Defendant SG Block's obligation to defend and indemnify Plaintiff in respect of the Pizzarotti Action.

104. This Court has jurisdiction pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations of Plaintiff in respect of its right to be defended and indemnified by Defendant SG Blocks in respect of the Pizzarotti Action.

105. Plaintiff is entitled to a declaratory judgment that Defendant SG Blocks is obligated to defend and indemnify Plaintiff in respect of the Pizzarotti Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment awarding Plaintiff:

A. On his First – Fourth Causes of Action, the following relief: (a) compensatory damage for unpaid wages and supplemental wages in an amount to be determined at trial but

believed to be at least $672,638; (b) prejudgment interest; (c) liquidated damages pursuant to the FLSA and NYLL, back pay, front pay, and damages for all employment benefits plaintiff would have received but for the unlawful acts and practices of Defendants, and plaintiff's costs and reasonable attorneys' fees; and

  B. On his Fifth Cause of Action, damages in an amount to be determined at trial but believed to be at least $5 million;

  C. On his Sixth Cause of Action, a Declaratory Judgment that Defendant SG Blocks is obligated to defend and indemnify Plaintiff from and against from and against all liability, damages, costs, and expense in respect of the Pizzarotti Action; and

  D. For such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all claims so triable.

Dated: Katonah, New York
   March 25, 2020

    GordonLaw LLP

    By: _____/s/_____
      Michael R. Gordon

    *Attorneys for Plaintiff Mahesh Shetty*
    51 Bedford Road, Suite 2
    Katonah, New York 10536
    Telephone 914.232.9500
    Fax    914.992.6634
    Email   mgordon@gordonlawllp.com