UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
MAHESH SHETTY,                                                      :
                                                                   :
                              Plaintiff,                           :        20-cv-00550-ARR-SMG
                                                                   :
          -against-                                                :        NOT FOR ELECTRONIC
                                                                   :        OR PRINT PUBLICATION
SG BLOCKS, INC., PAUL GALVIN, and OASIS, A                         :
PAYCHEX COMPANY                                                    :        OPINION & ORDER
                                                                   :
                              Defendants.                          :
                                                                   :
------------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff, Mahesh Shetty, brings this action against defendants SG Blocks, Inc., Paul Galvin, and Oasis, a Paychex Company. Shetty alleges six causes of action: (1) unpaid wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); (2) unpaid wages in violation of the New York Labor Law ("NYLL"); (3) failure to provide wage notices in violation of NYLL § 195; (4) breach of contract under New York law; (5) retaliation under the FLSA and the NYLL; and (6) a declaratory judgment stating that SG Blocks is required to defend and indemnify Shetty in a pending lawsuit.

Defendants have moved to dismiss the complaint in its entirety. Shetty has moved to require defendants' motion to be filed under seal. For the reasons that follow, defendants' motion is granted in part and denied in part, and Shetty's motion to seal is denied.

## BACKGROUND

### I.     The Defendants

Defendant SG Blocks, Inc. is a New York corporation which designs and fabricates "container-based structures." *Id.* ¶ 5. Defendant Paul Galvin is the CEO of SG Blocks. *Id.* ¶ 7.

Defendant Oasis, a Paychex Company, provided human resources services for SG Blocks during Shetty's employment. *Id.* ¶ 17. SG Blocks originally hired and signed an agreement with Staff One for the provision of human resources services. *See* Client Service Agreement, Am. Compl. Ex. 3, ECF No. 16-3. OASIS is the successor to Staff One. *See* Def.'s Mot. 27.

The Client Service Agreement states, "Staff One and Client intend to serve as co-employers of the Worksite Employees, with Staff One responsible for the services described in this Agreement while Client retains such employer responsibility necessary to conduct its business." Client Service Agreement at 1. Staff One would be responsible, among other things, for "retaining a right to hire, discipline, reassign and terminate Worksite Employees" and "payment of salaries, wages and other compensation due the Worksite Employees based upon timely and accurate information reported by Client[.]" *Id.* The Agreement explicitly states that it does not create any individual right for any employees. *Id.* at 17.

Plaintiff has not plead any facts about how the relationship between SG Blocks and Oasis functioned in practice.

## II.   Shetty's Employment and Compensation

Plaintiff Manhesh Shetty began working as President and Chief Financial Officer of SG Blocks on July 29, 2016. *Id.* ¶ 1. On January 1, 2017, he signed an Executive Employment Agreement ("the Agreement") which was in effect from the date of execution through the termination of his employment in August 2019. *Id.* ¶¶ 8–9. I excerpt below relevant portions of the Agreement, which is attached to the Amended Complaint as Exhibit 1. *See* ECF No. 16-1.

Section Two states:

"Executive's employment with the Company pursuant to the terms of this Agreement will begin on the Effective Date [Jan 1, 2017] and will remain in effect for a two (2) year period…(the "Initial Term"). After the end of the Initial Term, this Agreement shall automatically renew until either Party provides sixty (60)

2

days' prior written notice of termination ("Renewal Term"…)."

*Id.* at 1. Section Three states that that Shetty will be compensated with (a) a $180,000 base salary; (b) a discretionary annual cash bonus; (c) "the option to purchase up to 55,838 shares of the Company's issued and outstanding common stock, par value $0.01 per share ("Common Stock"), for an exercise price of $3.00 per share…"; (d) eligibility "to receive options to purchase 13,200 shares of Common Stock as a bonus in lieu of cash in connection with his and the Company's performance"; (e) "In connection with the public offering of the Common Stock…Executive will be eligible to receive options to purchase 132,446 shares of Common Stock." *Id.* at 2–3.

Section 8 governs compensation upon termination of employment as follows:

Upon the termination of Executive's employment during the Term:

(a) Executive shall be entitled to Executive's Base Salary before the effective date of termination of Executive's employment with the Company ("Termination Date"), prorated on the basis of the number of full days of service rendered by Executive during the salary payment period prior to the Termination Date….

(b) Executive shall be entitled to any unreimbursed reasonable business expenses…

(c) by the Company for Cause, death or disability, by Executive for any reason…or by the Company for any reason during the Renewal Term, Executive shall only receive the amounts and/or benefits listed in Sections 8(a) and (b), and the Company shall not owe Executive any further compensation.

(d) by the Company for any reason other than Cause, death or disability, (i) Executive shall receive: (A) the amounts and/or benefits listed in Sections 8(a) and 8(b); and (B) an amount equivalent to one (1) year of the Base Salary… and (ii) immediate vesting of any of the 104,209 outstanding stock objections owned by Mr. Shetty…the remain unvested as of the Termination Date.

*Id.* at 6–7. Section 11 states that this Agreement is the "entire agreement between the parties" and may only be modified "in writing…signed by Executive and an authorized representative of the Company." *Id.* at 8.

Shetty's base salary was later increased to $300,000. Am. Compl. ¶ 10. In 2017, Shetty

alleges that he deferred $127,500 in bonuses "at the Defendant Galvin's demand[.]" *Id.* ¶ 13. The deferred bonuses were converted in 2019 to restricted stock united ("RSU") which would vest in installments beginning on December 31, 2019 and would be delivered within 90 days of termination of employment. *Id*. in 2018 Shetty deferred $108,856 in compensation and $75,000 in bonuses, once again "at the Defendant Galvin's demand." *Id.* ¶ 15. The deferred compensation and bonuses were converted in 2019 to RSUs, set to vest on December 31, 2019 and to be delivered on January 1, 2020. *Id.* The deferral agreement is described in an SG Blocks Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, attached to the Amended Complaint as Exhibit Two. *See* ECF No. 16-2 at 20.

Defendants terminated Shetty's employment on August 20, 2019. Am. Compl. ¶ 24. Shetty alleges that none of the contracted for RSUs were actually issued. *Id*. ¶¶ 14–15. He alleges that he was never paid twelve months of wages and two performance bonuses totaling $372,638. *Id.* ¶ 25. He also did not receive $88,282 in salary arrears. *Id.* ¶ 27.

### III.    The Indemnification Agreement and the *Pizzarotti* Action

On July 1, 2016, Shetty signed a Director Indemnification Agreement ("Indemnification Agreement") with SG Blocks. Am. Compl. Ex. 5, ECF No. 16-5. The Indemnification Agreement states that that SG Blocks will "hold harmless and indemnify [Shetty] to the fullest extent authorized or permitted by law, the provisions of the Charter and the Bylaws[.]" *Id.* ¶ 1. The agreement further specifies that SG Blocks will indemnify director against legal expenses "actually and reasonably incurred by [Shetty]… because of any claim or claims made against or by him in connection with any Proceeding." *Id.* ¶ 2(a).

On August 10, 2018 an action was commenced in the Supreme Court of the State of New York, County of New York, entitled *Pizzarotti, LLC v. Phipps & Co, Jack Phipps, Maya Phipps,*

*SG Blocks Inc., and Mahesh Shetty*, Index No. 653996/2018 (the "Pizzarotti Action."). *Id.* ¶ 38. Plaintiff requested that SG Blocks defend and indemnify him from all liability, damages, and expenses in respect to the Pizarotti Action. *Id.* ¶ 39. Initially, SG Blocks hired the law firm Thompson Hine to defend both SG Blocks and Shetty. *Id.* ¶ 40. Thompson Hine withdrew as counsel, and the Ruto Soulios & Stratis LLP ("Soulios") substituted as counsel for SG Blocks. *Id.* 42. Soulios did not enter an appearance for Shetty, and SG Blocks did not provide Shetty with any other counsel. *Id.* ¶¶ 43–44. In December 2019, Galvin informed plaintiff that SG Blocks would pay for his expenses in the Pizzarotti Action, but SG Blocks later rescinded this agreement. *Id.* ¶¶ 48–49. Shetty alleges that he has been forced to incur substantial legal expense and is exposed to potential liability. *Id.* 50–51.

## IV.   Alleged Retaliation

Seeking to recover the unpaid compensation, Shetty filed a wage claim with the Texas Workforce Commission. *Id.* ¶ 48. On December, 10 2019, Shetty informed the SG Blocks Board of Directors that information contained in the company's December 9, 2019 S-1/A Statement was misleading. *Id.* ¶ ¶ 31–32. He demanded that these misrepresentations be corrected. *Id.* Shetty alleges that defendants engaged in various retaliatory actions against him in response to his wage claim and his statements to the Board of Directors. *Id.* ¶ 30.

Specifically, Shetty alleges that defendants retaliated by (1) withholding compensation due, (2) refusing to defend and indemnify him in the *Pizzarotti* Action; (3) threatening to move under Fed. R. Civ. P. 11 for sanctions, and (4) the issuance of a February 21, 2020 Form 8-K Statement containing false and defamatory statements about Shetty. *Id.* The compensation withheld refers to the alleged unpaid compensation described above in Section II, as well as director fees in the amount of $17,500. *Id.* ¶ 34. The refusal to defend and indemnify refers to the

*Pizarotti* action described above in Section III. The threat to move for sanctions refers to a statement in defendants' letter requesting a pre-motion conference. ECF No. 12 ("Defendants submit that the complaint is so lacking in merit as to warrant sanctions under Fed.R.Civ.P. 11.").

The February 21, 2020 Form 8-K is attached to the amended complaint as Exhibit 6. *See* ECF No. 16-6. The alleged false and defamatory statements in the Form 8-K are as follows: (1) that Shetty resigned in August 2019; (2) that "by written agreement [Plaintiff] agreed to accept restricted stock units of the Company's common stock in full satisfaction and payment of substantially all alleged unpaid wages and bonuses that are claimed in the [captioned] Action"; (3) that the Employment Agreement "expressly disclaims any entitlement to or liability for severance during the employee's renewal term of employment;" and (4) that Shetty's "Texas Wage Claim was voluntarily dismissed by the employee under the Company's filing of a fraud complaint[.] *See* Am. Compl. ¶ 53 (citing Form 8-K).

Plaintiff also alleges that defendant's counsel Soulios sent him communications intending "to intimidate Plaintiff and dissuade him from pursuing his rights under the FLSA and the NYLL." *Id.* ¶¶ 55–58.

## V.  Procedural History

Shetty filed this action on January 31, 2020, Compl. ECF No. 1, and filed an amended complaint on March 25, 2020. Am Compl. The amended complaint alleges 6 causes of action: (1) FLSA unpaid wages; (2) NYLL unpaid wages; (3) NYLL wage notice violation; (4) breach of contract; (5) FLSA and NYLL retaliation; and (6) declaratory judgment stating SG Blocks' indemnification obligation. *Id.* On April 9, 2020, I set a briefing schedule on defendant's proposed motion to dismiss. Apr. 9, 2020 Dkt. Entry. On May 18, 2020 plaintiff moved for the motion to be filed under seal. Pl.'s Mot. for Leave to Electronically File Doc. Under Seal, ("Pl.'s Mot. to Seal")

ECF No. 23. On May 28, 2020 defendants filed their Motion to Dismiss ("Def.'s Mot.") and all accompanying papers under seal pending the court's decision on plaintiff's motion to seal.

## DISCUSSION

### I.   Legal Standard for a Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Thus, in deciding defendants' motion to dismiss, the court must accept the facts alleged in plaintiff's amended complaint as true. The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 476 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)); *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d. Cir. 2011) ("Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.")

Factual disputes may not to be resolved on a motion to dismiss. *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015). "The test of a claim's 'substantive merits' is 'reserved for the summary judgment procedure, governed by [Federal Rule of Civil Procedure] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir.

2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir.2006)).

## II.    Documents to be Considered on a Motion to Dismiss

When Ruling on a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as…documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007)).

Documents that are "integral" to the complaint may also be considered, even if not expressly incorporated by reference. The Second Circuit has explained this standard as follows:

> A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (internal quotation marks omitted). Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering "limited quotation[s]" from the document is not enough. *Global Network Commc'ns*, 458 F.3d at 156; see also *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157.

*Goel*, 820 F.3d at 559. "[M]ere notice or possession" does not render a document "integral to the complaint. *Chambers,* 282 F.3d at 153.

"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998).

As an initial matter, I note that the vast majority of defendants' 40 exhibits do not meet this standard and thus I do not consider them in evaluating the motion. Many of the exhibits, such as

various emails and internal SG Blocks documents, so obviously do not meet the standard that their inclusion is entirely inappropriate and the extraneous information is distracting. *See, e.g.*, Def.'s Mot. Exs. 3–4; 11–14; 20–25; 34–35.

A small minority of defendants' exhibits can be properly considered on a motion to dismiss. A few of defendant's exhibits are also attached to the complaint. *See* Def.'s Mot. Ex. 9, February 21, 2020 Form 8-K, Ex. 10, April 22, 2019 Proxy Statement, and Ex. 34, March 12, 2020 Letter from Soulios to Shetty.

There are perhaps two document that are integral to the complaint. Defendant's exhibits 5 and 6 consist of Restricted Share Unit Agreements signed by Mr. Shetty on August 16, 2019. These contracts are integral to the complaint because they are necessary to Shetty's claims that he agreed to accept RSUs which he did not receive. *See*, *e.g.* Am. Compl. ¶¶ 13–15. As I will describe below, these RSU agreements ultimately have no bearing on my decision on the motion.

There are also matters of which I could take judicial notice. *E.g.* Def.'s Mot. Exs. 1–2; 17–19; 36–39. However, I can only rely on the existence, not the substance of those documents. Defendants' arguments require me to accept the contents of those documents as true, which I cannot do, so these submissions are not relevant to my analysis.

Even if I were to consider all of the defendants' voluminous documentary evidence in deciding the motion, it would not alter the outcome. The purpose of defendants' evidence is to contradict facts stated in the complaint. My decision on a Rule 12(b)(6) motion to only evaluates whether the complaint states a plausible claim for relief and cannot decide factual disputes.

Perhaps realizing that their evidence is not properly considered on a motion to dismiss, defendants suggest that I convert the motion into a motion for summary judgment. *See* Def.'s Reply 7–8, ECF No. 25. I decline to do so this early in the litigation, when the parties have not

engaged in any discovery and the plaintiff has not had the opportunity to introduce evidence.

### III.   FLSA Unpaid Wages

The FLSA protects workers by ensuring that they are paid a minimum wage, 29 U.S.C. § 206, and that non-exempt workers are properly compensated for work in excess of 40 hours per week. § 207. Under the FLSA, a plaintiff cannot recover wages other than minimum wage or legally required overtime compensation. *See*, *e.g.*, *Calle v. Yoneles Enterprises, Inc.*, No. 16-CV-1008 (NGG), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017), *report and recommendation adopted*, No. 16-cv-1008 (NGG) (RLM), 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018). ("Under the FLSA, a plaintiff can recover for unpaid "straight time" only up to the minimum wage rate.").

Shetty does not identify any relevant provision of the FLSA he seeks to recover under, *see* Am. Compl. ¶ 63, nor could he, because the FLSA does not apply to Shetty's claim that he was not compensated in salary and bonuses far exceeding minimum wage. Thus, Shetty's first cause of action for unpaid wages under the FLSA is dismissed.

### IV.   NYLL Unpaid Wages

Unlike the FLSA, the NYLL does allow for recovery of unpaid wages at "the agreed-upon rate, even if it exceeds the minimum wage." *Kernes v. Global Structures, LLC*, No. 15 Civ. 659 (CM)(DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016); *see* N.Y. Lab. Law ("NYLL") §§ 191(1)(a)(i), 191(1)(d) (mandating that workers "be paid ... in accordance with the agreed terms of employment...."). In most other respects, a claim for unpaid wages under the NYLL mirrors a claim under the FLSA. *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 81 (E.D.N.Y. 2012) The plaintiff must an "employee" and the defendant an "employer" as defined by the statute. *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-CV-5164 FB CLP, 2015 WL 739943, at *6 (E.D.N.Y. Feb. 20, 2015). I first analyze whether Shetty has alleged sufficient facts that each defendant qualifies

as his employer, and then turn to the question of whether Shetty has alleged sufficient facts that his employers failed to pay him agreed-upon wages.

    A.  *Definition of Employer and Application to the Defendants*

      To be held liable under the FLSA, which mirrors the standard of the NYLL, the defendant must be an employer, defined broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In view of this "broad language," the Second Circuit determines whether a defendant is properly considered an employer "on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–43 (2d Cir. 2008)). Whether the employer-employee relationship exists is based on "economic reality rather than technical concepts." *Barfield*, 537 F.3d at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). An individual may simultaneously have multiple employers for the purposes of a labor law complaint. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013) (ciyinh 29 C.F.R. § 791.2(a)).

      The Second Circuit has instructed district courts to look to "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *RSR*, 172 F.3d at 139 (citation omitted) (quoting *Whitaker*, 366 U.S. at 33). Specifically, "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)). That said, "[n]o one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances . . . ." *Id.* (citation omitted).

11

The parties do not dispute that SG Blocks was Shetty's employer, but there is a dispute as to whether Oasis or Galvin qualify as his employers. *See* Def.'s Mot. 27–32; 37.

Plaintiff's claim that Oasis was his employer rests on language from the Client Service Agreement between SG Blocks and Oasis's predecessor, Staff One. *See* Am. Compl. ¶¶ 16–21. Specifically, plaintiff points to language in the contract describing Staff One and SG Blocks "as co-employers of the Worksite Employees" and providing Oasis with the "right of direction and control over Worksite Employees[,]" *Id.* (quoting Client Services Agreement preamble, I.A.1-2). The Client Services Agreement further granted Staff One, "a right to hire, discipline, reassign and terminate Worksite Employees" as well as rights over "payment of salaries, wages and other compensation due the Worksite Employees." Client Services Agreement I.A.1-2, I.A..1-3. Shetty alleges that he qualified as a "Work Site Employee." Am. Compl. ¶ 21.

I find that these statements are taken out of context from the larger contract. *See* Defs.' Mot. 28–30. The Client Services Agreement is clear the SG Blocks was to maintain direct supervision of employees, while certain human resources tasks were delegated to Staff One, now Oasis. *Id.* at 30 (citing Client Services Agreement 1.A.4–16). The language plaintiff focuses on is necessary to comply with Texas law. *See id.* (citing Texas Labor Code. § 91.032).

Moreover, the "economic reality" is what matters in evaluating the employer-employee relationship. Plaintiff's reliance on cherry-picked phrases from the Client Service Agreement is not sufficient as a matter of law to support a claim that Oasis had any real control over SG Blocks employees within the meaning of the economic reality test. Plaintiff has not alleged that as a practical matter, Oasis had the power to hire and fire the employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, or maintained employment records. Thus, his claim that Oasis was his employer for the

purposes of labor law violations fails as a matter of law, and thus Oasis is dismissed from plaintiff's second cause of action, as well as the claims relying on defendants' status as an employer (plaintiff's third, and fifth causes of action).

Turning to Galvin, the complaint does make concrete factual allegations that he qualifies as an employer in the meaning of the economic reality test. Shetty alleges that he deferred bonuses and salary "at the Defendant Galvin's demand." ¶¶ 13–15. He also states, "At the direction and insistence of Defendant Galvin, Defendant SG Blocks took steps to withhold and did withhold salary and benefits from Plaintiff." *Id.* ¶ 31. The third and final allegation against Galvin in the complaint is that he communicated with Shetty on behalf of SG Blocks regarding the company's indemnification in the *Pizzarotti* Action. *Id.* ¶¶ 45–47.

Assuming the truth of plaintiff's factual allegations and drawing all inferences in his favor, I find that he has stated a plausible claim that Galvin was his employer. While Shetty did not make allegations as to all four of the factors considered by the Second Circuit, it is plausible that in a totality of the circumstances analysis, Galvin's influence over Shetty's salary and benefits was so significant that Galvin qualifies as Shetty's employer. Thus, I do not dismiss Galvin from the NYLL wage claim.

### B. *Shetty's Claim for Unpaid Agreed-Upon Compensation*

Turning to the substance of the claim, Shetty alleges that the defendants "demand[ed]" that he defer agreed-upon compensation in exchange for RSUs to be issued in 2019. *Id.* ¶¶ 13, 15. Shetty further alleges that those RSUs were never issued. *Id.* ¶¶ 13–14. He claims that defendants failed to pay him $372,638 in unpaid wages, as well as $88,282 in salary arrears. *Id.* ¶ 25, 27. Defendants dispute these allegations, claiming they can be definitively disproven by documentary evidence. Def.'s Mot. 22–25. This is not an appropriate argument for a motion to dismiss. Shetty

has made a plausible claim that he was denied agreed-upon compensation in violation of the NYLL. Thus, I deny defendants motion to dismiss plaintiff's second cause of action as to defendants SG Blocks and Galvin.

## V.      NYLL Wage Notice Violation

Shetty's third cause of action alleges that defendants violated NYLL § 195, which requires that employers "furnish each employee with a statement with every payment of wages, listing the following: …rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;…and net wages." *See* Am. Compl ¶¶ 72–77; N.Y. Lab. Law § 195(3). Shetty's allegation that he never received any such wage notices is sufficient to state a plausible claim for a violation of NYLL § 195. *See* Am. Compl. ¶ 28. Defendants' dispute the facts of plaintiff's allegations. Def.'s Mot. 21. Again, a factual dispute is not a basis for a motion to dismiss, and therefore I deny defendants' motion to dismiss the third cause of action.

## VI.      Breach of Contract

A breach of contract claim requires: (1) formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party, and (4) damages. *See, e.g.*, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). Shetty's breach of contract cause of action involves two alleged breaches. First, defendants' "refused to pay Plaintiff the wages he is due, including $170,138 in earned by unpaid wages and $202,500 in bonuses, net any payments that might have been made or credited to or on behalf of Plaintiff without his knowledge." Am. Compl ¶ 81. Second, defendants "refused to pay Plaintiff the severance in the amount of $300,000 due to him under the Executive Employment Agreement." *Id.* ¶ 83.

14

As to the first breach, plaintiff has plausibly pled the four elements of a breach of contract claim. The contract at issue, the Executive Employment Agreement, is attached to the complaint, and the parties do not dispute that it is enforceable. Plaintiff alleges that he performed all of his responsibilities under the contract. *Id.* ¶¶ 22–24. He further alleges that defendants failed to fully compensate him for 12 months of wages and two bonuses required by the terms of the contract, causing him damages in the amount of $372,638. *Id.* ¶ 25. Defendants disagree and proffer evidence to the contrary. Once again, a factual dispute is not cause to dismiss a complaint. Thus, I deny defendants' motion as to the breach of contract claim regarding unpaid wages.

However, Shetty has failed to show a breach as to his claim for severance. On the face of the Agreement, it is clear that Shetty is not entitled to severance. Section 8(d) Agreement provides for severance pay if the executive is "terminated by the Company for any reason other than Cause, death or Disability[.]" Agreement 7. However, the prior provision, section 8(c) clearly states that the executive will *not* receive severance pay if terminated "by the Company for any reason during the Renewal Term." *Id.* Elsewhere, the contract states that the two-year period following the effective date is the "Initial Term" and that the Agreement will thereafter automatically renew unless terminated. *Id.* at 1. The "Renewal Term" is the period following the initial term of two years and the automatically renewal. *Id.*

The effective date of the Agreement is January 1, 2017. *Id.* The Initial Term ended, and the Renewal Term began, on January 1, 2019. Shetty was terminated on August 20, 2019. Am. Compl. ¶ 24. He was terminated during the Renewal term, and thus section 8(c) applies to his termination, meaning that he is not entitled to severance.

Defendant's motion is denied as to plaintiff's breach of contract claim regarding unpaid wages. The motion is granted as to plaintiff's breach of contract claim regarding severance.

## VII.   FLSA and NYLL Retaliation

The retaliation provisions of the FLSA and the NYLL are "nearly identical." *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018 PKC JO, 2020 WL 364168, at *9 (E.D.N.Y. Jan. 22, 2020) (quoting *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.18 (S.D.N.Y. 2008)).

The FLSA retaliation provision states:

> [I]t shall be unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3). The parallel provision in the NYLL states:

> No employer…shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint… (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or (iv) because such employee has provided information to the commissioner or his or her authorized representative or the attorney general, or (v) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or (vi) because such employee has otherwise exercised rights protected under this chapter, or (vii) because the employer has received an adverse determination from the commissioner involving the employee.

N.Y. Lab. Law § 215.

The elements of a prima facie claim of unlawful retaliation under either statute are as follows: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Jones*, 2020 WL 364168, at

16

*9 (citing *Quintanilla v. Suffolk Paving Corp.*, No. 09-CV-5331 (AKT), 2019 WL 885933, at *19 (E.D.N.Y. Feb. 22, 2019)).

Shetty claims he was retaliated against for the following actions: (1) filing a wage claim with the Texas Workforce Commission, Am. Compl ¶ 48, and (2) informing the SG Blocks Board of Directors that information contained in the company's December 9, 2019 S-1/A Statement was misleading. *Id.* ¶¶ 31–32. The former action constitutes protected activity under the FLSA and NYLL. It was a complaint regarding a violation of Shetty's labor law rights, namely a failure to pay wages owed. The latter action is not protected activity under the FLSA or the NYLL because it does not relate to a labor law violation. Retaliation for a complaint unrelated to labor law violations is not covered by the plain language of the FLSA or NYLL. Thus, any aspect of Shetty's claim that rests on retaliation for his complaint regarding the S-1/A Statement fails as a matter of law.

Turning to the second element, Shetty alleges that defendants took the following adverse employment actions against him: (1) withholding compensation due, (2) refusing to defend and indemnify him in the *Pizzarotti* Action; (3) threatening to move under Fed. R. Civ. P. 11 for sanctions, and (4) the issuance of a February 21, 2020 Form 8-K Statement containing false and defamatory statements about Shetty. Am. Compl. ¶¶ 30–58.

As defendants note, all of the alleged retaliatory actions occurred after Shetty's August 2019 termination. Defs.' Mot. 33. Employer actions after termination may, in some instances, constitute retaliatory action. *See, e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 509 (S.D.N.Y. 2013); *Liverpool v. Con–Way, Inc.*, 08 Civ. 4076(JG)(JO), 2009 WL 1362965 (E.D.N.Y. May 15, 2009); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008). Thus,

plaintiff has not failed to plead the second element of a retaliation claim merely because the alleged adverse actions occurred after his termination.

Plaintiff claims that the above adverse actions were taken to retaliate against him for filing a wage claim. Defendants urge me to consider their documentary submissions to find otherwise. Defs. Br. 34–36. As I have repeatedly stated in this opinion, the complaint does not need to prove the merits of the claim to survive a motion to dismiss. It is sufficient that Shetty has pled specific facts to make out each element of an FLSA and NYLL retaliation claim.

Shetty's claims of FLSA and NYLL retaliation in regards to his complaint about the accuracy of the S-1/A Statement fail as a matter of law. However, Shetty has plausibly stated a claim of retaliation in regard to his wage complaint, and thus, I deny defendants' motion as to the fifth cause of action.

## VIII.   Declaratory Judgment

Shetty seeks a declaratory judgment stating that he has a right to be defended and indemnified by SG Blocks in the *Pizzarotti* Action. Am. Compl. ¶ 104. Shetty plausibly states a claim that he is entitled to such a declaratory judgment based on SG Blocks' alleged refusal to defend and indemnify him in accordance with the Indemnification Agreement. *Id.* ¶¶ 101–105.

Defendants' motion contains two sentences addressing the indemnification issue. SG Blocks states that this is not appropriate venue to hear Shetty's claim for indemnification, without providing any elaboration or legal citations. Because defendant has not put forth any reasoned argument regarding the sixth cause of action, the motion to dismiss this claim is denied.

## IX.   Motion to Seal

Plaintiff has moved to seal defendants' entire motion to dismiss on the grounds that "the motion improperly puts into the public record two declarations containing factual allegations about

18

Plaintiff and 40 exhibits, 37 of which have nothing to do with the facial validly of the Amended Complaint[.]" Mem. of Law in Supp. of Pl.'s Mot. to Seal ("Mot. to Seal") 4, ECF No. 20-11.

A common law presumption of public access attaches to all judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). District Courts in the Second Circuit follows a three-step analysis to determine whether judicial documents may be sealed. *Id.* First, the court must decide whether the document issue is in fact a judicial document, meaning that the document is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995). If the items are determined to be judicial documents, the next step is to determine the weight of the presumption of access. *Id.* at 1049. The Second Circuit advises that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* The third step in the inquiry requires balancing countervailing considerations, including factors such as "the privacy interests of those resisting disclosure" against the presumption. *Id.* at 1050.

A. *Judicial Documents*

In *Lugosch*, the Second Circuit held that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 126. District courts in this circuit have extended this reasoning to documents filed in support of a motion to dismiss. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018); *Albino v. Glob. Equip. USA, LTD.,* No. 6:14-CV-06519(MAT), 2018 WL 1805553, at *2 (W.D.N.Y. Apr. 17, 2018); *Raffaele v. City of N.Y.*, No. 13-CV-4607 KAM VVP, 2014 WL 2573464, at *1 (E.D.N.Y. June 9, 2014). Plaintiff cites one precedent where documents attached

to a motion to dismiss were not considered judicial documents. *See* Def.'s Reply in Sup. of Mot. to Seal 6–7, ECF No. 27 (citing *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 64 (S.D.N.Y. 2007)). However, I find that case, which is 13 years old, to be less persuasive than the more recent cases I cited above. A motion to dismiss, like a motion for summary judgment, requires an adjudication, and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch*, 435 F.3d at 121 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

My agreement with the plaintiff that defendants' evidentiary submissions are irrelevant does not mean that they are not judicial documents. The public has a presumptive right to access documents that were submitted as part of an Article III adjudication.

### B.  Weight of the Presumption and Countervailing Considerations

Documents are not to be given "different weights of presumption based on the extent to which they were relied upon in resolving the motion." *Lugosch*, 435 F.3d at 123. Thus, the fact that I do not actually rely on defendants' submissions does not weaken the presumption of public access. The public still has a right to look at the documents underlying my decision, even a decision that determines that the documents are not relevant. *See id.* ("If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision ... documents that the judge should have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." (quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D.Cal.1984))).

The presumption of public access could still be overcome if the plaintiff offers sufficient countervailing considerations. I find that he has not done so.

Plaintiff cites several cases which provide examples of countervailing considerations. *See*

20

Pl.'s Mot. to Seal 4–6. (citing *e.g. Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978); *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. March 3, 2020)).  However, the circumstances of those cases are vastly different from the case presented here. They involve a politically scandalous and incriminating recording, *Nixon*, 435 U.S. at 598, and a video embarrassing to a victim of sexual assault. *Mirlis*, 953 F.3d at 62.

Plaintiff alleges that the motion and the attached documents cause him "embarrassment and harm that will come from the public drawing the erroneous conclusion that he must not have responded to the allegations against him because he has no response.". Pl.'s Mot. to Seal 6. The fact that a member of the public could draw an incorrect conclusion is not a basis for sealing a document. Indeed, a member of the public could draw the incorrect conclusion that all statements in the complaint are factually proven, when of course, they are merely assertions by the plaintiff.

Plaintiff's privacy interests in what are largely public documents is minimal, and none of the exhibits contain information of a highly sensitive nature. Shetty's fear of public embarrassment as to his alleged conduct as CFO of SG Blocks does not outweigh the presumption of public access.

I will state clearly here that Shetty has no obligation to respond at this time to the factual assertions made in defendants' motion. Defendants' submission of and reliance on extrinsic evidence on a motion to dismiss was distracting, unhelpful, inappropriate, and not to be repeated. But I am not prepared to find that such an error constitutes extraordinary circumstances which require sealing judicial documents.

## CONCLUSION

For the reasons discussed above, I grant defendant's motion to dismiss in part and deny the motion to dismiss in part. Specifically, I grant the motion as to the first cause of action, the FLSA claim, and to the portion of the fourth cause of action claiming a breach of contract due to failure

to pay severance. Additionally, I grant the motion to dismiss Oasis from this action. Shetty may proceed against defendants SG Blocks and Galvin on all other causes of action, including the fourth cause of action as it pertains to the denial of wages and bonuses.

The motion to seal is denied. All papers relating to this motion which were filed under seal pending this decision are to be filed publicly.

So ordered.

Date:   June 12, 2020                                            _/s/_____

        Brooklyn, New York                          Allyne R. Ross
                                                     United States District Judge