UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                   :

MAHESH SHETTY,                            :
                                     :

                  Plaintiff,              :       20-cv-00550-ARR-SMG
                                     :

      -against-                          :       <u>NOT FOR ELECTRONIC</u>
                                     :       <u>OR PRINT PUBLICATION</u>

SG BLOCKS, INC. and PAUL GALVIN          :
                                     :       <u>OPINION & ORDER</u>

                Defendants.             :
                                     :

---------------------------------------------------------------- :
                                   X

ROSS, United States District Judge:

       Mahesh Shetty brought this action against his former employers to recover unpaid salary,

bonuses, and severance allegedly owed to him. Defendants moved to dismiss the complaint, and I

granted the motion in part and denied the motion in part. Shetty now seeks to amend his complaint

in an attempt to reassert a claim which I dismissed. The proposed second amended complaint states

new facts and new causes of action in support of Shetty's claim that he is entitled to severance. He

also includes his claims for other unpaid compensation as part of his new causes of action.  As I

explained in my previous decision, the parties entered an enforceable written agreement which

unambiguously states that Shetty is not entitled to severance. The written agreement is an

enforceable contract with a valid merger clause, and thus precludes any quasi-contract on the

subject of salary, bonuses, or severance. Shetty's motion to amend is dismissed as futile.

## BACKGROUND

### I.     The Employment Agreement

       Shetty's employment at SG Blocks was governed by an Executive Employment Agreement

("the Agreement") which was in effect from January 1, 2017 through the termination of his

employment in August 2019. First Amended Compl. ("FAC") ¶¶ 8–9, ECF No. 16. The agreement

is attached to the FAC as Exhibit 1. *See* ECF No. 16-1. The following portions of the Agreement

are most relevant to Shetty's compensation, including salary, bonuses, and severance.

Section Two states:

"Executive's employment with the Company pursuant to the terms of this Agreement will begin on the Effective Date [Jan 1, 2017] and will remain in effect for a two (2) year period…(the "Initial Term"). After the end of the Initial Term, this Agreement shall automatically renew until either Party provides sixty (60) days' prior written notice of termination ("Renewal Term"…)."

*Id.* at 1.

Section Three states, in relevant part, that that Shetty will be compensated with (a) a

$180,000 base salary[1]; (b) a discretionary annual cash bonus on the first two anniversaries of the

Agreement; (c) "the option to purchase up to 55,838 shares of the Company's issued and

outstanding common stock, par value $0.01 per share ("Common Stock"), for an exercise price of

$3.00 per share…"; (d) eligibility "to receive options to purchase 13,200 shares of Common Stock

as a bonus in lieu of cash in connection with his and the Company's performance"; (e) "In

connection with the public offering of the Common Stock…Executive will be eligible to receive

options to purchase 132,446 shares of Common Stock." *Id.* at 2–3. Plaintiff has also identified

Section 3(i) as relevant to this litigation. Reply Mem. of Law in Further Supp. of Pl.'s Mot. to

Amend ("Pl.'s Reply") 3, ECF 49. Section 3(i) states:

Compensation shall only be required, and Executive's entitlement to any of the benefits referenced in this Section 3 shall only be effect, during the Term and any termination of Executive's employment or of this agreement shall terminate the Company's obligation to compensate Executive in any manner or provide any of the benefits referenced in this Section 3 for any period following the date of Executive's termination of employment or of this Agreement, unless otherwise required by applicable law, any applicable plan documents as they may be amended from time to time, or Section 8.

*Id.* at 2.

---

[1] Shetty' salary was later raised to $300,00. *See* FAC ¶ 10.

Section Eight states that, upon the termination of Executive's employment during the Term:

> (a)      Executive shall be entitled to Executive's Base Salary before the effective date of termination of Executive's employment with the Company ("Termination Date"), prorated on the basis of the number of full days of service rendered by Executive during the salary payment period prior to the Termination Date….
>
> (b)      Executive shall be entitled to any unreimbursed reasonable business expenses…
>
> (c) by the Company for Cause, death or disability, by Executive for any reason…or by the Company for any reason during the Renewal Term, Executive shall only receive the amounts and/or benefits listed in Sections 8(a) and (b), and the Company shall not owe Executive any further compensation.
>
> (d) by the Company for any reason other than Cause, death or disability, (i) Executive shall receive: (A) the amounts and/or benefits listed in Sections 8(a) and 8(b); and (B) an amount equivalent to one (1) year of the Base Salary… and (ii) immediate vesting of any of the 104,209 outstanding stock objections owned by Mr. Shetty…the remain unvested as of the Termination Date.

*Id.* at 6–7.

Section 11 states, in relevant part:

> **Entire Agreement:** This Agreement, together with the Stock Option Agreement to be entered into between the Parties, is the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any previous agreements, written or oral, between Executive and the Company with regard to the subject matter of this Agreement. This Agreement may not be modified or amended orally, and any amendment or modification must be in writing and be signed by Executive and an authorized representative of the Company.

*Id.* at 8.

## II.    Shetty's Communications with SG Blocks Regarding Deferral of his Salary

In his FAC, Shetty alleges that in 2017, he deferred $127,500 in bonuses "at the Defendant Galvin's demand[.]" *Id.* ¶ 13. The deferred bonuses were converted in 2019 to restricted stock units ("RSU") which would vest in installments beginning on December 31, 2019 and would be

3

delivered within 90 days of termination of employment. *Id*. In 2018 Shetty deferred $108,856 in compensation and $75,000 in bonuses, once again "at the Defendant Galvin's demand." *Id*. ¶ 15. The deferred salary and bonuses were converted in 2019 to RSUs, set to vest on December 31, 2019 and to be delivered on January 1, 2020. *Id*. Shetty alleges that these RSUs were never actually issued. *Id*. ¶¶ 14–15.

The deferral agreement is described in an SG Blocks Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, attached to the FAC as Exhibit Two. *See* ECF No. 16-2 at 20. The portion of the Proxy Statement describing the deferral of executive bonuses and salaries reads, in part:

> (1) "…[A] special bonus payment…will be paid in RSUs, to each of Messrs, Galvin, and Shetty of $127,500 and Mr. Armstrong of $30,000.... Such RSUs will vest in three equal annual installments, beginning on December 31, 2020, and will be delivered within 90 days of when the executive is no longer employed at the company….

> (3) On March 22, 2019, the Compensation Committee approved payment of bonuses $93,624 to Mr. Galvin, $75,000 to Mr. Shetty and $11,667 to Mr. Armstrong…. The Compensation Committee determined to pay each of these bonuses in the form of RSUs, which will vest on December 31, 2019 and will be delivered to each employee on January 1, 2020…

> (5) During 2018, Messrs, Galvin, and Shetty earned salary compensation of $370,000 and $300,000 respectively….Messrs, Galvin and Shetty voluntarily deferred $110,400 and $106,856, respectively, of their annual base salary during 2018. Such deferred salary amounts were paid in 2019 in the form of RSUs. The RSUs received by Messrs, Galvin and Shetty for deferred salary will vest on December 31, 2019 and will be payable on January 1, 2020.

*Id.* In a discussion of the terms of executive employment agreements, the Proxy Statement says that Shetty's Agreement "provides for the payment of severance compensation equal to one year of his base annual salary if his employment is terminated by the Company other than for 'Cause,' as defined therein." *Id.* at 22.

In his proposed Second Amended Complaint, Shetty provides additional details about

communications with SG Blocks representatives regarding promises made to him in exchange for deferral of his salary. *See* Proposed Second Amended Complaint ("SAC") ¶¶ 15–33, ECF No. 45-3. Shetty alleges that he agreed to defer his compensation only because Galvin promised him that he would be able to recoup his compensation at a future date and he would secure his right to severance, even if he were terminated during the Renewal Period. *Id.* ¶¶ 15–16. Shetty further alleges:

> Between January 2019 and August 2019, members of the Board of Directors and Galvin repeatedly confirmed to Plaintiff, orally and in writing, that SG Blocks was contractually obligated to provide severance to Plaintiff even though the "Renewal Period" as term was used in the Executive Employment Agreement, was in effect as of the date Plaintiff was terminated, August 20, 2019.

Id. ¶ 26.

These alleged communications include: (1) a March 2019 oral statement by Galvin to Shetty that Shetty should include a reference to his severance in the Proxy Statement, *Id.* ¶ 27; (2) the content of the April 2019 Proxy Statement quoted above, *Id.* ¶ 29, (3) two May 2019 conversations between Galvin and Shetty regarding deferred salary and future compensation *Id.* ¶¶ 30–31; (4) an August 6, 2019 email from SG Blocks' outside counsel regarding new employment contracts, *id.* ¶ 33; (5) a conversation between Galvin and Shetty on August 8, 2020 during which Galvin assured Shetty that there would be full compensation for all deferred wages, *id.* ¶ 34; (6) an email from another SG Blocks executive regarding employment contracts that Galvin forwarded to Shetty. *Id.* ¶ 35. The proposed SAC goes on to allege:

> These oral and written statements by SG Blocks are representative of a much larger universe of oral and written communications between Plaintiff and senior SG Blocks management and counsel in which SG Blocks senior management and counsel never once questioned the applicability of the severance provisions of the Executive Employment Agreement, never once questioned or challenged Plaintiffs right to severance under the Executive Employment Agreement even during the so-called Renewal Period, and repeatedly and affirmatively confirmed to Plaintiff directly his right to severance on termination." *Id.* ¶ 36

Shetty asserts that he was not paid the compensation he was promised during these conversations with SG Blocks senior management. FAC ¶ 24–27.

## DISCUSSION

Federal Rule of Civil Procedure 15 states, "The court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: undue delay, bad faith [or] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *NRW, Inc. v. Bindra*, 2015 WL 3763852, at *1 (S.D.N.Y. 2015) (citing *Ruotolo v. City of New York*, 514 F.3d184, 191 (2d Cir.2008)).

The aspect of the leave to amend standard most relevant here is futility. "An amendment should be rejected as 'futile' when the proposed new pleading would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *CUnet, LLC v. Quad Partners*, LLC, 2017 WL 945937, at *5 (S.D.N.Y. 2017). As described below, Shetty's proposed amended and additional claims are futile.

## I.    Breach of Contract

Shetty argues that the additional facts in his proposed SAC cure the defects in his breach of contract claim which caused me to dismiss the portion of his fourth cause of action regarding severance. The proposed SAC does not cure the defects in the breach of contract claim, nor could it, because as I discussed in my prior opinion, the Agreement clearly states that Shetty is not entitled to severance. The relevant portion of that opinion reads:

> Shetty has failed to show a breach as to his claim for severance. On the face of the Agreement, it is clear that Shetty is not entitled to severance. Section 8(d)

Agreement provides for severance pay if the executive is "terminated by the Company for any reason other than Cause, death or Disability[.]" Agreement 7. However, the prior provision, section 8(c) clearly states that the executive will *not* receive severance pay if terminated "by the Company for any reason during the Renewal Term." *Id.* Elsewhere, the contract states that the two-year period following the effective date is the "Initial Term" and that the Agreement will thereafter automatically renew unless terminated. *Id.* at 1. The "Renewal Term" is the period following the initial term of two years and the automatically renewal.

The effective date of the Agreement is January 1, 2017. *Id.* The Initial Term ended, and the Renewal Term began, on January 1, 2019. Shetty was terminated on August 20, 2019. Am. Compl. ¶ 24. He was terminated during the Renewal term, and thus section 8(c) applies to his termination, meaning that he is not entitled to severance.

Opinion & Order, June 15, 2020, ECF No. 32.

Shetty now essentially asks me to reconsider that decision based on an amendment providing additional irrelevant details. None of his new allegations have any effect on the enforceability of the Agreement or the plain meaning of its language. Shetty urges me to consider extrinsic evidence to complicate a simple, straightforward contractual analysis. *See* Pl.'s Br. 5–8 (arguing that I should consider "admissions by Defendants and other proof that clarify and explain the contract language").

In New York, it is well-settled law that a court may consider extrinsic evidence only if the written contract is ambiguous. *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014) (citing *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (2013)). This means that I cannot consider "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated." *Id.* at 816 (2d Cir. 2014) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (1990)). "Furthermore, where a contract contains a merger clause, a court is obliged 'to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing[.]'" *Schron*, 986 N.E. 2d at 433–34 (quoting *Matter of Primex Intl. Corp. v. Wal–Mart Stores*, 679 N.E.2d 624

(1997)).

Section 11 of the Agreement is a merger clause, which prohibits the admission of extrinsic evidence. *See* Agreement at 8 ("This Agreement…is the entire agreement between the Parties with respect to the subject matter hereof….This Agreement may not be modified or amended orally, and any amendment or modification must be in writing and be signed by Executive and an authorized representative of the Company."). Moreover, the language of Section 8(c) is also unambiguous: if terminated during the Renewal Term, the executive is not entitled to severance. Agreement at 6–7. There is no reason to consider any parol evidence to interpret this contract.

Shetty's reply brief puts forward a strained and meritless argument that the plain language of the Agreement is somehow ambiguous. Pl.'s Reply 2–4. He asserts that Section 3(i), which limits discretionary cash bonuses to the first two years of the term, suggests that Section 8(c)'s denial of compensation to an executive terminated during the Renewal Term applies only to bonuses and not severance. *Id.* at 3. Again, Section 8(c) clearly states that an executive terminated during the Renewal Term is not entitled to "any further compensation" beyond prorated salary and business expenses. Agreement at 11. Section 3(i) addresses a separate, unrelated issue regarding bonuses. *Id.* a 2. Plaintiff also argues that the statement in Section 8(d) that "any expiration of the Term shall not be a termination by the Company that would require any payments to Executive under this Section" means that "Plaintiff would not be entitled to severance after the expiration of the Initial Term and after the expiration of the Renewal Term, which means that he was entitled to severance during the Renewal Term." *Id.* Perhaps this would be a plausible interpretation if not for the immediately proceeding subsection, which specifically states that an executive terminated during the Renewal Term is entitled to prorated salary and business expenses, but no other compensation.

Because the contract is so clear, Shetty's amendment is futile. As I stated in my order on the motion to dismiss, Shetty may maintain a contractual claim for unpaid salary and wages, but not for severance.

## II.     Quasi Contract Claims

Shetty's new quasi-contract claims, promissory estoppel and *quantum merit*, fail essentially the same reason. The parties agreed that the employment contract signed on January 1, 2017 would be the "**entire agreement**" regarding the terms of Shetty's employment, including salary, bonuses, and severance. Agreement 8. The Agreement provides a single, clear rule for amending the terms of the contract: "any amendment or modification must be in writing and be signed by Executive and an authorized representative of the Company." Agreement 8.

Despite this merger clause, plaintiff asks me to find that oral statements, emails, and the SEC Proxy Statement as evidence that he is entitled to severance despite the terms of the contract. *See* SAC ¶¶ 27 – 35; Pl.'s Br. 9 ("Plaintiff…was repeatedly assured by Defendants that if he deferred his compensation he would be repaid in full and that he would be entitled to severance if he were terminated, even during the so-called Renewal Period."). The defendants' alleged statements do not create any new quasi-contractual obligations because the terms of employment, including salary, bonuses, and severance, were governed by an enforceable contract. *See Bader v. Wells Fargo Home Mortgage Inc.*, 773 F. Supp. 2d 397, 414 – 15 (S.D.N.Y. 2011) ("Where a valid agreement exists between the parties, an action in *quantum meruit* to prevent unjust enrichment ordinarily is not available); *Kwon v. Yun*, 606 F. Supp. 2d 344, 368 (S.D.N.Y. 2009) ("Because it is a quasi-contractual claim, however, promissory estoppel generally applies only in the absence of a valid and enforceable contract); *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) ("This is not a situation where there is a promise but no contract. Rather, the

parties have a written agreement…and it is absolutely clear that it bars any promise other than those set forth in the agreement.").

Plaintiff asserts that the alleged promises defendants made in 2019 created "a separate bargain and understanding not covered by the Agreement but enforceable through the doctrines of promissory estoppel and quasi-contract." Pl.'s Reply 5. This argument hinges on the fact that plaintiff agreed to defer his salary, a circumstance not described in the Agreement. *Id.* But Shetty's salary, bonuses, and severance are part of the Agreement, and if the parties wanted to change Shetty's compensation in light of changing circumstances, they needed to make a written modification signed by Shetty and an SG Blocks representative. *See* Agreement 8.

Plaintiff alleges that his promissory estoppel and in quantum merit claims are valid despite the existence of an enforceable contract because quasi-contractual claims can be pled in the alternative. Pl.'s Br. 10. But this as a case where there is no genuine dispute as the existence of the Agreement nor the meaning of its relevant terms. The problem here is not that the contract and quasi-contract claims are contradictory, but instead that they both fail because there is a written enforceable contract.

## CONCLUSION

For the reasons discussed above, plaintiff's motion to amend is denied. None of plaintiff's new factual allegations have any bearing on my analysis of his entitlement to severance, and any amendment to attempt to recover severance would be futile.

So ordered.


Date:   August 13, 2020                              _/s/_____

        Brooklyn, New York                           Allyne R. Ross
                                                     United States District Judge